# CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Scholastic Inc., Grolier Incorporated and Scholastic at Home, Inc. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    New York, NY<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: In land condemnation cases, use the location of the tract of land involved. |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Laurie Weinstein<br>Assistant U.S. Attorney<br>555 4th Street, N.W.<br>Washington, DC 20001<br>202-514-7133 | Robert B. Bell<br>David Medine<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>2445 M Street, NW, Washington, DC 20037 |

## II BASIS OF JURISDICTION
(SELECT ONE BOX ONLY)

- ● 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)
( FOR DIVERSITY CASES ONLY!)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- ☐ 410 Antitrust

### ● B. Personal Injury/ Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☒ 690 Other

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ⊙ G. Habeas Corpus/2255 | ⊙ H. Employment Discrimination | ⊙ I. FOIA/PRIVACY ACT | ⊙ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ⊙ K. Labor/ERISA (non-employment) | ⊙ L. Other Civil Rights (non-employment) | ⊙ M. Contract | ⊙ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

FTC Act 15 U.S.C. 45(a), 52(b), 56(a), 57b. Recover monetary civil penalties for engaging in acts of unfair and deceptive practices

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ Civil Penalties    Select YES only if demanded in complaint
JURY DEMAND: ☐ YES    ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction)    ☐ YES    ☒ NO    If yes, please complete related case form.

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) | |
| v. | ) ) | COMPLAINT FOR CIVIL PENALTIES AND PERMANENT INJUNCTION |
| SCHOLASTIC INC., GROLIER INCORPORATED, and SCHOLASTIC AT HOME, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff, the United States of America, acting upon notification and authorization to the

Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its complaint,

alleges that:

1.      Plaintiff brings this action under Sections 5(a), 13(b), and 16(a) and 19 of the

Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 56(a), and 57b; the

Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C.

§ 6101, et seq.; and the Unordered Merchandise Statute, 39 U.S.C. § 3009, to secure a permanent

injunction and other equitable relief from Defendants for engaging in acts or practices violating

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the FTC's Trade Regulation Rule entitled "Use

of Prenotification Negative Option Plans" ("Prenotification Negative Option Rule"), 16 C.F.R.

Part 425; the FTC's Rule entitled "Telemarketing Sales Rule" ("Telemarketing Sales Rule"), 16

C.F.R. Part 310; and the Unordered Merchandise Statute, and to recover monetary civil penalties

pursuant to Section 5(m)(l)(A) and (B) of the FTC Act, 15 U.S.C. § 45(m)(1)(A) and (B), from

Defendants for engaging in acts or practices previously determined by the Commission to be

unfair and deceptive and unlawful under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and for

engaging in acts or practices violating the Prenotification Negative Option Rule and the

Telemarketing Sales Rule.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 45(a),

45(m)(1)(A) and (B), 53(b), 56(a), 57b, and 6105(b), and 28 U.S.C. §§ 1331, 1337(a), 1339,

1345, and 1355.

3.      Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c), and 1395(a),

and 15 U.S.C. § 53(b).

## DEFENDANTS

4.      Defendant Scholastic Inc., ("Scholastic"), a New York corporation with its

principal place of business located at 557 Broadway, New York, New York, 10012, transacts or

has transacted business in this district.  Scholastic is the corporate parent of Defendant Grolier

Incorporated, which Scholastic acquired in June 2000.

5.      Defendant Grolier Incorporated ("Grolier") is a wholly-owned subsidiary of

Scholastic.  Grolier is a Delaware corporation with its principal place of business located at 90

Sherman Turnpike, Danbury, Connecticut, 06816.  Grolier transacts or has transacted business in

this district.

6.    Defendant Scholastic at Home, Inc., ("SAH"), is a wholly-owned subsidiary of Grolier.  SAH is a Delaware corporation with its principal place of business located at 90 Sherman Turnpike, Danbury, Connecticut, 06816.  SAH transacts or has transacted business in this district.

7.    Scholastic, Grolier, and SAH, ("Defendants"), operated a common business enterprise while engaging in the acts and practices alleged below and are therefore jointly and severally liable for said acts and practices.

## COMMERCE

8.    At all times relevant to this Complaint, Defendants' course of business, including the acts and practices alleged herein, has been and is in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## COURSE OF CONDUCT

9.    Scholastic describes itself as the largest publisher and distributor of children's books in the world.  Scholastic, through Grolier, operates direct-to-home book clubs, primarily serving children, as one of its principal distribution channels.

10.    Scholastic's subsidiary Grolier is a children's book publisher.  Prior to its acquisition by Scholastic, Grolier independently operated various book clubs.  Currently, Grolier operates these and other book clubs together with Scholastic.  Among other things, Grolier's subsidiary SAH invoices consumers, attempts to collect unpaid balances, and handles consumer inquiries and complaints.  SAH also creates, prepares, and disseminates certain promotional materials for the book clubs, as does Scholastic.

11.    Since at least January 2001, Defendants have marketed their direct-to-home book clubs through direct mail solicitations; through Internet advertising on their own websites, including <www.homeclubs.scholastic.com>; through various third-party Internet websites with which they have directly or indirectly contracted; and through an outbound telemarketing campaign, among other methods.

12.    Defendants' advertising in connection with direct-to-home book clubs offered two associated programs: (1) a base book club operated as a continuity program (*i.e.*, consumers receive periodic shipments of books without prior notification by Defendants before each shipment) and, (2) supplemental plans selling books and other merchandise operated as Prenotification Negative Option plans within the meaning of the Prenotification Negative Option Rule (*i.e.*, consumers periodically receive announcements which identify books or other merchandise that Defendants propose to send, and the consumers thereafter receive and are billed for the merchandise identified in each such announcement, unless they instruct Defendants not to send the identified merchandise) (hereinafter referred to as "supplemental plans" or "Prenotification Negative Option plans"). Consumers typically were required to purchase a minimum of four monthly continuity program shipments in order to fulfill base book club requirements. Merchandise consumers purchased as part of a supplemental plan did not count toward the base book club minimum purchase requirement.  In addition, consumers had to cancel the base book club and supplemental plans separately.

13.    Defendants' direct mail solicitations, Internet advertising, and outbound telemarketing campaign advertised Defendants' base book clubs and supplemental plans by offering consumers a promotional "introduction" to a base book club.  The advertising for the

promotional introduction offered consumers (1) one or more free gifts – (typically books and/or book-related items such as book bags or cardboard book shelves), (2) a "preview" of one or more base book club "trial books" priced below typical club selections, and (3) a supplemental plan.

14.     Defendants' marketing materials disclosed the terms and conditions of base book clubs, including that consumers who are enrolled in a base book club would receive, each month, 2 books and other materials; that consumers would have 10 days to review the books and to decide whether to keep or return them; and that consumers could cancel after purchasing four regular monthly packages.

15.     After describing the base book club's terms and conditions, the Defendants' marketing materials referred to a supplemental plan.  For example, many of Defendants' marketing materials, including, but not limited to, scripts and direct mail solicitations, stated:

> By joining, up to three times each year you will also receive, on approval, special
> . . . [club related] items as they are made available.  You will be notified prior to
> shipment with details and the price; and you may cancel any annual shipment you
> do not wish to receive.

Defendants did not state that the supplemental plan is a Prenotification Negative Option plan; that consumers had to send back a form to Defendants to avoid shipments and the obligation to pay for or return them; that consumers' purchase of supplemental plan shipments did not count toward the minimum purchase requirements of Defendants' base book clubs; how consumers could cancel their enrollment in a supplemental plan; and that cancelling the base book club did not cancel enrollment in a supplemental plan, or that cancelling a supplemental plan did not cancel enrollment in a base book club.

16.    Introductory shipments of the base book club and the free gifts were accompanied by an invoice, typically for $8.98 (including shipping and handling).  Attached to the invoice was a letter that described the introductory shipment; the terms of the base book club, including that consumers must purchase four monthly shipments to fulfill their minimum purchase requirement; and, using essentially the same language as in the initial advertising, the existence of a supplemental plan.  The letter did not state that the supplemental plan is a Prenotification Negative Option plan; that consumers had to send back a form to Defendants to avoid shipments and the obligation to pay for or return them; that consumers' purchase of supplemental plan shipments did not count toward the minimum purchase requirements of Defendants' base book clubs; how consumers could cancel their enrollment in a supplemental plan; and that cancelling the base book club did not cancel enrollment in a supplemental plan, or that cancelling a supplemental plan did not cancel enrollment in a base book club.

17.    If consumers kept the invoiced trial book(s) beyond the preview period and/or paid the invoice in full or in part, Defendants enrolled them in the base book club.  Defendants shipped to consumers enrolled in a base book club monthly, continuity program shipments "on approval," without prior notification of any individual shipment.  Each base book club shipment was accompanied by an invoice, typically for $13.47.  Consumers could return a base book club shipment they did not wish to purchase by paying to return the shipment and seeking reimbursement of their shipping costs from Defendants or by requesting a postage paid return label from the Defendants.

18.    Once base book club members purchased two base book club shipments, Defendants enrolled them into a supplemental Prenotification Negative Option plan.  (Although

Defendants sometimes call the supplemental Prenotification Negative Option shipments "annual" shipments, the shipments occur up to three times per year and are thus not "annual supplements" excluded from coverage under the Prenotification Negative Option Rule.)

19.    After the Defendants enrolled consumers in a supplemental plan, they sent consumers "Announcement" letters notifying them in advance of each Prenotification Negative Option plan shipment. The letters instructed consumers that "[i]f you do not wish to examine [the featured product], tell us "no" by writing "cancel" on the bottom third of this letter and returning it to us within ten days." The letters did not include rejection forms and did not state that the supplemental plan was a Prenotification Negative Option plan; that consumers' purchase of supplemental plan shipments did not count toward the minimum purchase requirements of Defendants' base book clubs; or that cancelling the base book club did not cancel enrollment in a supplemental plan, or that cancelling a supplemental plan did not cancel enrollment in a base book club.

20.    If consumers did not send back the letter to cancel the shipment, the Defendants sent the Prenotification Negative Option plan shipment, accompanied by an invoice. The price of supplemental plan shipments varied depending on the books or other merchandise offered. For example, a shipment of two "giant-size" books cost $17.96, including shipping and handling; a shipment of three "full-color" books in another supplemental plan cost $13.74, including shipping and handling. Consumers who did not return the announcement letter to avoid the shipment and who did not wish to purchase the shipment could return it by paying to return the shipment and seeking reimbursement of their shipping costs from Defendants or by requesting a postage paid return label from the Defendants.

21.    Defendants, in numerous instances:  (1) received requests to cancel from consumers who believed that they had met Defendants' base book club minimum purchase requirements by making at least four purchases from Defendants' solicitations (including supplemental plan solicitations), (2) failed to cancel such consumers' accounts, on the basis that the consumers' purchase of supplemental plan shipments did not count toward Defendants' minimum purchase requirements, and (3) continued to send and invoice further monthly base book club and supplemental plan shipments to such consumers.

22.    Since at least January 2001, Defendants, in numerous instances, received requests to cancel from acknowledged contract-complete consumers (*i.e.*, consumers acknowledged by Defendants to have fulfilled minimum purchase requirements for the base book club).  In numerous instances Defendants cancelled those consumers' enrollment in the base book club but continued to send and invoice further supplemental plan shipments to such consumers.

## PRIOR INJUNCTION AND DEFENDANTS' ACTUAL KNOWLEDGE

23.    On February 14, 1994, the U.S. District Court for the District of Connecticut entered a consent decree ("1994 consent decree") between the United States and Grolier (and its then-corporate parent Hachette Book Group USA, Inc.) requiring payment of a $200,000 civil penalty and enjoining Grolier and its successors and assigns from violating Sections 5(a)(1) and 5(m)(1)(B) of the FTC Act, 15 U.S.C. § § 45(a)(1) and 45(m)(1)(B), and the Unordered Merchandise Statute, 39 U.S.C. § 3009, by sending merchandise to consumers without their prior express consent.  Unless Grolier obtains a consumer's express authorization to participate in a Prenotification Negative Option marketing plan, the consent decree further enjoins Grolier from representing that: (1) the consumer's failure to do something shall constitute a request that

Grolier send merchandise to the consumer, and (2) the consumer is obligated to pay for or return the merchandise.

24.     Attached as Appendix A to the 1994 consent decree was a copy of the Unordered Merchandise Statute, and the Synopsis of Federal Trade Commission Decisions Concerning Unordered Merchandise. The Commission determined in those decisions that shipping unordered merchandise and sending communications that seek to obtain payment for or return of merchandise shipped without the expressed consent of the recipient are unfair and deceptive acts or practices and are unlawful. (A copy of the 1994 consent decree, with its attached Appendix A, is attached herewith as Exhibit A.) On May 25, 2000, prior to Grolier's acquisition by Scholastic, the FTC served a copy of the 1994 consent decree and its attached Appendix A on Scholastic. The consent decree and Appendix A were also an exhibit to the Acquisition Agreement effecting the June 2000 acquisition. The FTC again served a copy of the 1994 consent decree and Appendix A on Scholastic on June 18, 2003.

25.     Defendants therefore have had actual, ongoing knowledge that shipping unordered merchandise and sending communications that seek to obtain payment for or return of merchandise shipped without the expressed consent of the recipient are unfair and deceptive acts or practices and are unlawful. As set forth above, Defendants continued to ship unordered merchandise to consumers and continued to send communications that seek to obtain payment for it at least since January 2001.

## PRIOR COMMISSION DETERMINATIONS CONCERNING
## UNFAIR AND DECEPTIVE ACTS OR PRACTICES IN COMMERCE

In a proceeding under Section 5(b) of the FTC Act, 15 U.S.C. § 45(b), concerning *Sunshine Art*

*Studios, Inc.*, FTC Docket No. 8825, 81 F.T.C. 836 (1972), *aff'd*, 481 F.2d 1171 (1st Cir. 1973),

the Commission on November 30, 1972, determined that, in connection with the advertising,

offering for sale, sale or distribution of any product in commerce, as "commerce" is defined in

the FTC Act, certain acts or practices are unfair and deceptive and unlawful under Section 5(a)(1)

of the FTC Act, 15 U.S.C. § 45(a)(1), and in that proceeding on that date with respect to such

acts or practices the Commission issued a final order to Cease and Desist ("the Commission's

Final Order").

26.    In *Sunshine Art Studios, Inc.* the Commission determined that:

i.    It is an unfair and deceptive act or practice to send any merchandise by any means

without the expressed request or consent of the recipient unless such merchandise

has attached to it a clear and conspicuous statement that the recipient may treat the

merchandise as a gift and has the right to retain, use, discard, or dispose of it in

any manner that the recipient sees fit without any obligation whatsoever to the

sender;

ii.    It is an unfair and deceptive act or practice to send any communication that in any

manner seeks to obtain payment for or return of merchandise shipped without the

expressed consent of the recipient.

## THE FTC ACT

27.    Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1), provides that "unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

28.    Misrepresentations or omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

29.    In numerous instances since January 2001, in connection with the sale, offering for sale, or distribution of books and other merchandise through direct-to-home clubs, as described in Paragraphs 9-22, Defendants failed to disclose or to disclose adequately prior to automatic enrollment, which occurred once consumers paid for two base book club shipments, the terms and obligations of their Prenotification Negative Option plans including: (1) how consumers must act to avoid periodic supplemental plan shipments and the obligation to pay for or return them; (2) that the purchase of supplemental plan shipments did not count toward the minimum purchase requirements of Defendants' base book clubs; and (3) that the cancellation of a consumer's enrollment in a base book club did not cancel future supplemental plan shipments. These facts would have been material to consumers in their decisions to: (1) order and pay for introductory base book club shipments; (2) purchase supplemental plan shipments; and (3) cancel future supplemental plan shipments expressly.

30.    Defendants' failure to disclose or to disclose adequately these material facts is a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

31.     In numerous instances since January 2001, in connection with the sale, offering

for sale, or distribution of books and other merchandise through direct-to-home clubs, as

described in Paragraphs 9-22, Defendants:

    i.     Mailed or caused to be mailed shipments of books and other merchandise (1) to

        consumers who had already purchased four shipments from Defendants' book

        clubs (including supplemental plan shipments) but were refused cancellation of

        their enrollment by Defendants on the basis that their purchase of supplemental

        plan shipments did not count toward minimum purchase requirements; and (2) to

        acknowledged contract-complete consumers who cancelled their enrollments but

        were not informed that cancellation of a consumer's enrollment in Defendants'

        base book clubs did not cancel future supplemental plan shipments, without the

        prior expressed request or consent of the recipients, or without attaching to the

        shipments statements that the recipients may treat the shipments as a gift and have

        the right to retain, use, discard, or dispose of them in any manner the recipients

        see fit without any obligation to the Defendants; and, consequently

    ii.     Sent communications that seek to obtain payment for or return of books and other

        merchandise shipped without the expressed consent of the recipients.

32.     Defendants engaged in the acts and practices described in Paragraph 32 with

actual knowledge that such practices have been determined by the Commission to be unfair and

deceptive and are unlawful under Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1), as set

forth in Section 5(m)(1)(B) of the FTC Act 15 U.S.C. § 45(m)(1)(B). Defendants, therefore,

violated Section 5(m)(1)(B) of the FTC Act.

### THE UNORDERED MERCHANDISE STATUTE

33.     The Unordered Merchandise Statute was enacted in 1970 and since that date has

remained in full force and effect. It prohibits the shipping and billing for unordered merchandise

that does not fall into narrow exceptions. The statute also prohibits sending dunning

communications to recipients of unordered merchandise.

34.     Specifically, the Unordered Merchandise Statute, 39 U.S.C. § 3009, reads as

follows:

Sec. 3009. Mailing of unordered merchandise

(a) Except for (1) free samples clearly and conspicuously marked as such, and (2)

merchandise mailed by a charitable organization soliciting contributions, the mailing of

unordered merchandise or of communications prohibited by subsection (c) of this section

constitutes an unfair method of competition and an unfair trade practice in violation of

section 45(a)(1) of title 15.

(b) Any merchandise mailed in violation of subsection (a) of this section, or within the

exceptions contained therein, may be treated as a gift by the recipient, who shall have the

right to retain, use, discard, or dispose of it in any manner he sees fit without any

obligation whatsoever to the sender. . . .

(c) No mailer of any merchandise mailed in violation of subsection (a) of this section, or

within the exceptions contained therein, shall mail to any recipient of such merchandise a

bill for such merchandise or any dunning communications.

(d) For the purposes of this section, "unordered merchandise" means merchandise mailed without the prior expressed request or consent of the recipient.

35.    Pursuant to Section (a) of the Unordered Merchandise Statute, 39 U.S.C. § 3009(a), violations of the Unordered Merchandise Statute are unfair or deceptive acts or practices in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).

## COUNT III

36.    In numerous instances since January 2001, in connection with the sale, offering for sale, or distribution of books and other merchandise through their direct-to-home clubs, as described in Paragraph 9-22, Defendants:

    i.    Mailed books or other merchandise, without prior expressed request or consent (1) to consumers who had already purchased four shipments from Defendants' book clubs (including supplemental plan shipments) but were refused cancellation of their enrollment by Defendants on the basis that their purchase of supplemental plan shipments did not count toward minimum purchase requirements; and (2) to acknowledged contract-complete consumers who cancelled their enrollments but were not informed that cancellation of a consumer's enrollment in Defendants' base book clubs did not cancel future supplemental plan shipments; and, consequently,

    ii.    Mailed bills and dunning communications to consumers to whom they mailed books or other merchandise without the prior expressed request or consent of the recipients.

Defendants thereby violated Sections (a) and (c) of the Unordered Merchandise Statute,

39 U.S.C. § 3009(a) and (c).

## THE PRENOTIFICATION NEGATIVE OPTION RULE

.37.    The Prenotification Negative Option Rule, promulgated by the Commission on

February 15, 1973, became effective on June 7, 1974.  The Rule was amended by the

Commission in 1998 under Section 18 of the FTC Act, 15 U.S.C. § 57a.  The amended Rule

became effective on August 20, 1998, and has since that date remained in full force and effect.

38.    The Prenotification Negative Option Rule regulates sellers of merchandise that

operate negative option plans.  A negative option plan is defined by the Rule as "a contractual

plan or arrangement under which a seller periodically sends to subscribers an announcement

which identifies merchandise (other than annual supplements to previously acquired

merchandise) it proposes to send to subscribers to such plan, and the subscribers thereafter

receive and are billed for the merchandise identified in each such announcement, unless by a date

or within a time specified by the seller with respect to each such announcement the subscribers,

in conformity with the provisions of such plan, instruct the seller not to send the identified

merchandise."  16 C.F.R. § 425.1(c)(1).

39.    The Prenotification Negative Option Rule requires a seller to disclose all

material terms of membership in a negative option plan in any promotional material that contains

a device, such as an order form, that a consumer can return to the seller to subscribe to the plan.

16 C.F.R. § 425.(a)(1).

40.    Specifically, the Prenotification Negative Option Rule contains the following

provisions:

Sec. 425.1 The rule.

(a) . . . it is an unfair or deceptive act or practice, for a seller in connection with the use

of any negative option plan to fail to comply with the following requirements:

> (1) Promotional material shall clearly and conspicuously disclose the material
>
> terms of the plan . . . .

41.    Pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), violations of

the Prenotification Negative Option Rule are unfair or deceptive acts or practices in violation of

Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).

42.    Defendants are sellers that operate negative option plans within the meaning of

the Commission's Prenotification Negative Option Rule, 16 C.F.R. §§ 425.1(c)(1).

## COUNT IV

43.    In numerous instances since January 2001, in connection with the sale, offering

for sale, or distribution of books and other merchandise through their direct-to-home clubs, as

described in Paragraphs 9-22, Defendants disseminated promotional material that failed to

disclose clearly and conspicuously all of the material terms of Defendants' supplemental

Prenotification Negative Option plans, including, without limitation, that the cancellation of a

consumer's enrollment in a base book club did not cancel future supplemental Prenotification

Negative Option shipments, thereby violating Section 425.1(a)(1) of the Prenotification Negative

Option Rule.

## TELEMARKETING SALES RULE

44.    Pursuant to the Telemarketing Act, on August 16, 1995, the FTC promulgated the

Telemarketing Sales Rule, 16 C.F.R. Part 310, with a Statement of Basis and Purpose, 60 Fed.

Reg. 43842 (Aug. 23, 1995). The Rule became effective on December 31, 1995, and was

amended by the Commission in 2003. The amended Rule became effective on March 31, 2003

(except for specific provisions not at issue in this case), and since that date has remained in full

force and effect.

45.     The Telemarketing Sales Rule prohibits deceptive and abusive telemarketing acts

or practices. Specifically, the Telemarketing Sales Rule contains the following provision:

Sec. 310.3 Deceptive telemarketing acts or practices.

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing

act or practice and a violation of this Rule for any seller or telemarketer to engage in the

following conduct:

(1) Before a customer pays for goods or services offered, failing to disclose

truthfully, in a clear and conspicuous manner, the following material information:

* * *

(vii) If the offer includes a negative option feature, all material terms and

conditions of the negative option feature . . . .

* * *

46.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and

Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), violations of the Telemarketing Sales

Rule are unfair or deceptive acts or practices in or affecting commerce, in violation of Section

5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).

47.     Defendants are sellers engaged in telemarketing within the meaning of the

Telemarketing Sales Rule, 16 C.F.R. §§ 310.2(r) and (u). Defendants' book clubs include

negative option features within the meaning of the Telemarketing Sales Rule, 16 C.F.R. § 310.2(t).

## COUNT V

48.    In numerous instances since March 31, 2003, in connection with the telemarketing of their direct-to-home clubs, as described in Paragraphs 9-22, Defendants failed to disclose truthfully, in a clear and conspicuous manner, before the customer paid for goods that resulted in enrollment in a supplemental plan, all material terms and conditions of the supplemental plan's negative option features, including, but not limited to: (1) how consumers must act to avoid periodic supplemental plan shipments and the obligation to pay for or return them; and (2) that the cancellation of a consumer's enrollment in a base book club did not cancel future supplemental plan shipments, thereby violating Section 310.3(a)(1)(vii) of the Telemarketing Sales Rule.

## CONSUMER INJURY

49.    Consumers throughout the United States have suffered substantial monetary loss as a result of Defendants' unlawful acts or practices.  In addition, Defendants have been unjustly enriched as a result of their unlawful practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## COURT'S POWER TO AWARD
## CIVIL PENALTIES, INJUNCTIVE AND OTHER RELIEF

50.    Defendants violated the Prenotification Negative Option Rule and the

Telemarketing Sales Rule as described above with knowledge as set forth in Section 5(m)(1)(A)

of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

51.    Each advertisement, piece of promotional material, or telemarketing call

disseminated or made by the Defendants since January 1, 2001, that failed to comply with the

Prenotification Negative Option Rule, and each telemarketing call made by Defendants since

March 31, 2003, that failed to comply with the Telemarketing Sales Rule in one or more of the

ways described above constituted a separate violation for which plaintiff seeks monetary civil

penalties.

52.    Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), authorizes the

Court to award monetary civil penalties of not more than $10,000 for each such violation of the

Prenotification Negative Option Rule and the Telemarketing Sales Rule.  Section 4 of the Federal

Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt

Collection Improvement Act of 1996, Pub.L. 104-134, 110 Stat. 1321-373 § 31001, and Federal

Trade Commission Rule 1.98(d), 16 C.F.R. § 1.98(d), 61 Fed. Reg. 54549 (Oct. 21, 1996),

authorizes the Court to award monetary civil penalties of not more than $11,000 for each such

violation of the Prenotification Negative Option Rule and the Telemarketing Sales Rule.

53.    Section 5(m)(1)(B) of the FTC Act, 15 U.S.C. § 45(m)(1)(B), Section 4 of the

Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by

the Debt Collection Improvement Act of 1996, Pub.L. 104-134, and Federal Trade Commission

Rule 1.98(e), 16 C.F.R. § 1.98(e), 61 Fed. Reg. 54548 (Oct. 21, 1996), authorize the Court to

award monetary civil penalties of not more than $11,000 for each violation of previous Commission determinations concerning unfair and deceptive acts or practices in commerce.

54.    Each shipment of unordered merchandise made by Defendants since January 1, 2001, constituted a separate violation for which Plaintiff seeks monetary civil penalties.

55.    Section 19 of the FTC Act, 15 U.S.C. § 57b, authorizes this Court to award such relief as is necessary to redress the injury to consumers or others resulting from defendant's violation of the Prenotification Negative Option Rule and the Telemarketing Sales Rule.

56.    Under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is authorized to enjoin the defendant from violating the Prenotification Negative Option Rule, the Telemarketing Sales Rule, the Unordered Merchandise Statute, and the FTC Act, as well as to grant plaintiff ancillary equitable relief.

## PRAYER FOR INJUNCTIVE AND MONETARY RELIEF

WHEREFORE, Plaintiff requests that this Court, pursuant to 15 U.S.C. §§ 45(a), 45(m)(1)(A) and (B), 53b, 57b, and the Court's own equity powers:

(1)  Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this Complaint;

(2)  Enjoin Defendants from violating the Prenotification Negative Option Rule, the Telemarketing Sales Rule, the Unordered Merchandise Statute, and the FTC Act;

(3)  Award Plaintiff monetary civil penalties from Defendants for each violation of Commission determinations concerning unfair and deceptive acts or practices in commerce; and for each violation of the Prenotification Negative Option Rule and the Telemarketing Sales Rule alleged in this Complaint; and

(4)     Award Plaintiff such other and additional equitable relief as the Court may deem

just and proper.

DATED:

Of Counsel:                                    FOR THE UNITED STATES OF AMERICA:

JAMES REILLY DOLAN                             PETER D. KEISLER
Assistant Director for Enforcement             Assistant Attorney General
Bureau of Consumer Protection                  Civil Division
Federal Trade Commission                       U.S. Department of Justice

EDWIN RODRIGUEZ                                KENNETH L. WAINSTEIN
Attorney                                       United States Attorney
Division of Enforcement                        District of Columbia
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
(202) 326-3147                                 *Laurie Weinstein* /cwmw

                                               LAURIE WEINSTEIN, D.C.BAR 389511
                                               Assistant United States Attorney
                                               555 4th St., NW
                                               Washington, D.C. 20001
                                               (202)


                                               EUGENE M. THIROLF
                                               Director
                                               Office of Consumer Litigation


                                               *Elizabeth Stein*
                                               ELIZABETH STEIN
                                               Attorney
                                               Office of Consumer Litigation
                                               Civil Division
                                               U.S. Department of Justice
                                               950 Pennsylvania Avenue, NW
                                               Washington, DC 20530-0001
                                               (202) 307-0486
                                               (202) 514-8742 Facsimile