IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) | CIVIL ACTION NO. **05 1216** |
| Plaintiff, | ) ) |  |
| v. | ) ) | CONSENT DECREE |
| SCHOLASTIC INC., GROLIER INCORPORATED, and SCHOLASTIC AT HOME, INC., | ) ) ) ) ) |  |
| Defendants. | ) ) |  |

WHEREAS, Plaintiff, the United States of America, has commenced this action by filing the Complaint herein; Defendants have waived service of the Summons and Complaint; the parties have been represented by the attorneys whose names appear hereafter; and the parties have agreed to the settlement of this action upon the following terms and conditions, without adjudication of any issue of fact or law and without Defendants admitting liability for any of the matters alleged in the Complaint;

NOW, THEREFORE, upon stipulation of Plaintiff and Defendants, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. This Court has jurisdiction of the subject matter and of the parties, and venue in this district is proper as to all parties.

2. The Complaint states a claim upon which relief may be granted against the Defendants under Sections 5(a), 5(m)(1)(A) and (B), 13(b), 16(a) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(1)(A) and (B), 53(b), 56(a) and 57b.

3. Entry of this order is in the public interest.

4. The parties hereto stipulate and agree to this Consent Decree, without trial or final adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the allegations in the Complaint. Although the Defendants agree to enter into this Order, Defendants deny all of the allegations set forth in the Complaint other than the jurisdictional facts set forth in the Complaint.

## DEFINITIONS

5. "Announcement" has the meaning set forth in Section 425.1(c)(6) of the Prenotification Negative Option Rule, which is: "any material sent by a seller using a Negative Option Plan in which the Selection is identified and offered to Subscribers."

6. "Book Club" means the direct-to-home book clubs operated by Defendants that offer books to consumers on a Continuity Program basis.

7. "Continuity Program" means any plan, arrangement, or system pursuant to which a consumer receives periodic shipments of products or the provision of services without prior notification by the seller before each shipment or service period, regardless of any trial or approval period allowing the consumer to return or be reimbursed for the product or service.

8. "Contract-complete Subscriber" means any Subscriber who has purchased the minimum quantity of merchandise required by the terms of membership in a Book Club or Prenotification Negative Option Plan.

9. "Form" has the meaning set forth in Section 425.1(c)(7) of the Prenotification Negative Option Rule, which is: "any form which the Subscriber returns to the seller to instruct the seller not to send the Selection."

10. "Free-to-pay Conversion" means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

11. "Negative Option Feature" means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer. The term includes such a provision in offers or agreements involving Free-to-pay Conversions, automatic renewals, Continuity Programs, and Prenotification Negative Option Plans covered by the Commission's Rule entitled the "Use of Prenotification Negative Option Plans," 16 C.F.R. Part 425 (2003) ("Prenotification Negative Option Rule").

12. "Prenotification Negative Option Plan" has the meaning set forth in Section 425.1(c)(1) of the FTC's Trade Regulation Rule entitled "Use of Prenotification Negative Option Plans" ("Prenotification Negative Option Rule"), 16 C.F.R. Part 425, which is: "a contractual plan or arrangement under which a seller periodically sends to Subscribers an Announcement which identifies merchandise (other than annual supplements to previously acquired merchandise) it proposes to send to Subscribers to such plan, and the Subscribers thereafter receive and are billed for the merchandise identified in each such Announcement, unless by a date or within a time specified by the seller with respect to each such Announcement the

Subscribers, in conformity with the provisions of such plan, instruct the seller not to send the identified merchandise."

13. "Selection" has the meaning set forth in Section 425.1(c)(5) of the Prenotification Negative Option Rule, which is: "the merchandise identified by a seller under any Negative Option Plan as the merchandise which the Subscriber will receive and be billed for, unless by the date, or within the period specified by the seller, the Subscriber instructs the seller not to send such merchandise."

14. "Subscriber" means any person who has agreed to receive the benefits of, and assume the obligations entailed in, membership in any Book Club and whose membership in such Book Club has been approved and accepted by the seller.

## JUDGMENT FOR CIVIL PENALTY

15. Judgment is hereby entered against Defendants Scholastic Inc., Grolier Incorporated, and Scholastic at Home, Inc. ("Defendants"), jointly and severally, in the amount of $710,000 as a civil penalty, pursuant to Section 5(m)(1)(A) and (B) of the FTC Act, 15 U.S.C. § 45(m)(1)(A) and (B). Defendants must pay the civil penalty within five (5) calendar days of the date of entry of this Order by electronic fund transfer in accordance with instructions provided by the Office of Consumer Litigation, Civil Division, U.S. Department of Justice, Washington, D.C. 20530, for appropriate disposition. In the event of any default in any payment, which default continues for ten days beyond the due date of payment, the entire unpaid payment, together with interest, as computed pursuant to 28 U.S.C. § 1961 from the date of default to the date of payment, will immediately become due and payable directly to Plaintiff.

## INJUNCTION

**Prohibited Business Activities in Connection with Negative Option Features**

16. Defendants, their successors and assigns, and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any one or more of them who receive actual notice of this Consent Decree by personal service or otherwise, are hereby enjoined from:

   A.  Making any representation, in any manner, expressly or by implication, in connection with the offering to consumers of any offer with a Negative Option Feature, unless, at the time of making such representation, all material terms and conditions of the offer with a Negative Option Feature are clearly and conspicuously disclosed, including:

   i.  if true, that a Subscriber's purchase of supplementary books and other merchandise offered on a Prenotification Negative Option Plan basis does not count toward the minimum purchase requirements of Defendants' Book Clubs; and

   ii. if true, that cancellation of a Subscriber's enrollment in a Book Club does not cancel future Prenotification Negative Option Plan shipments.

   iii. if true, that consumers who accept an offer with a Negative Option Feature may receive subsequent offers or additional products or services that require consumers to contact the Defendants to avoid receiving additional products or services and incurring any financial obligation for such additional products or services;

   iv. if true, that the Defendants automatically enroll consumers in a Prenotification Negative Option Plan or a Continuity Program, if consumers make purchases or accept products or services or products or services for a free trial period;

   v. if true, that consumers who accept an offer with a Negative Option Feature are responsible for returning the products that the Defendants offer, at their cost, or that the Defendants will pay for the cost to return such products; and

   vi. before a customer pays for products or services, at least one reasonable means consumers may effectively use to prevent the shipment of additional products, the provision of additional services, or any financial obligation for additional products or services.

 B. Misrepresenting any material term or condition of any offer with a Negative Option Feature.

 C. Selling or distributing or causing to be sold or distributed products or services by means of a Negative Option Feature without first obtaining the consent of consumers to participate in a program or plan with a Negative Option Feature before any shipment of products or provision of services is made. Prior to obtaining consumers' consent, Defendants must disclose clearly and conspicuously in all promotional materials and solicitations, including, but not limited to, direct mail solicitations or inbound and outbound telemarketing calls,

all material terms and conditions of the offer with a Negative Option Feature, including, but not limited to:

i. the fact that periodic shipments of products or the periodic provision or the continuation of services will occur without further action by consumers;

ii. if true, the fact that Subscribers will be enrolled in a Prenotification Negative Option Plan or other plan or program with a Negative Option Feature;

iii. a description of each good or the type of good to be included in each shipment or a description of the services that will be performed or continued;

iv. the approximate interval between each shipment or service period or the number of shipments or service periods per year;

v. the cost or range of costs for each shipment or service period, including whether consumers must pay for shipping and handling;

vi. a description of the billing procedure to be employed for each shipment or period of service;

vii. the minimum number of purchases or minimum service period required by the Defendants, if any;

viii. if the Defendants have a policy of not making refunds or accepting returns, a statement that this is the Defendants' policy or if Defendants make representations about refunds, cancellations, exchanges or repurchasing

     policies a statement of all material terms and conditions of a guarantee, refund or return policy; and

 ix. a description of the terms, conditions, and procedures under which consumers may cancel further shipments or discontinue a service.

**Business Activities Prohibited Pursuant to the Unordered Merchandise Statute and Previous Commission Determinations**

17. Defendants, their successors and assigns, and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of this Consent Decree by personal service or otherwise, in connection with the advertising, promotion, offer for sale or sale of any product or service, are hereby enjoined from violating, directly or through any corporation, subsidiary, division or other device, any provision of the Unordered Merchandise Statute, 39 U.S.C. § 3009(a), or as it may hereafter be amended. A copy of this Rule and a synopsis of previous Commission determinations are attached hereto as "Attachment C" and incorporated herein as if fully set forth verbatim.

18. Defendants, their successors and assigns, and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of this Consent Decree by personal service or otherwise, in connection with the advertising, promotion, offer for sale or sale of any product or service, are hereby enjoined, directly or through any corporation, subsidiary, division or other device, from:

 A. Sending any merchandise without the prior expressed request or consent of the recipient unless such merchandise is clearly and conspicuously marked as a free sample and has attached to it a clear and conspicuous statement that the recipient

  may treat the merchandise as a gift and may retain, use, discard or dispose of it in any manner without any obligation whatsoever to the sender.

B. Sending any communication, including bills, invoices, reminders, letters, notices or dunning communications, that in any manner seeks to obtain payment for any merchandise shipped without the prior expressed request or consent of the recipient.

### Business Activities Prohibited Pursuant to
### The Prenotification Negative Option Rule

19. Defendants, their successors and assigns, and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any one or more of them who receive actual notice of this Consent Decree by personal service or otherwise, are hereby enjoined from ever violating, directly or through any corporation, subsidiary, division or other device, any provision of the Prenotification Negative Option Rule or as the Rule may hereafter be amended, including, but not limited to, by failing to disclose clearly and conspicuously in any advertisement containing or accompanying any device or material that a prospective Subscriber utilizes to request acceptance or enrollment in a Prenotification Negative Option Plan, all material terms of membership in Defendants' Prenotification Negative Option Plan, as required by Section 425.1(a)(1) of the Prenotification Negative Option Rule. Such material terms include, but are not limited to:

A. That aspect of the plan under which the Subscriber must notify the seller, in the manner provided for by the seller, if the Subscriber does not wish to purchase the Selection;

B.  Any obligation assumed by the Subscriber to purchase a minimum quantity of merchandise;

C.  The right of a Contract-complete Subscriber to cancel his membership at any time;

D.  Whether billing charges will include an amount for postage and handling;

E.  A disclosure indicating that the Subscriber will be provided with at least ten (10) days in which to mail any Form, contained in or accompanying an Announcement identifying the Selection, to the seller;

F.  A disclosure that the seller will credit the return of any Selections sent to a Subscriber, and guarantee to the Postal Service or the Subscriber postage to return such Selections to the seller when the Announcement and Form are not received by the Subscriber in time to afford him at least ten (10) days in which to mail his Form to the seller; and

G.  The frequency with which the Announcements and Forms will be sent to the Subscriber and the maximum number of Announcements and Forms which will be sent to him during a 12-month period.

A copy of this Rule is attached hereto as "Attachment A" and incorporated herein as if fully set forth verbatim.

### Business Activities Prohibited Pursuant to The Telemarketing Sales Rule

20. Defendants, their successors and assigns, and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any one or more

of them who receive actual notice of this Consent Decree by personal service or otherwise, are hereby enjoined from ever violating, directly or through any corporation, subsidiary, division or other device, any provision of the Federal Trade Commission's Rule entitled "Telemarketing Sales Rule," 16 C.F.R. Part 310, or as it may hereafter be amended, including, but not limited to, failing to disclose truthfully, in a clear and conspicuous manner, before a customer pays for goods or services offered, all material terms and conditions of an offer for goods or services that includes a Negative Option Feature, including, but not limited to, (i) how consumers must act to avoid periodic supplemental plan shipments and the obligation to pay for or return them, and, (ii) if true, that the cancellation of a consumer's enrollment in a base book club does not cancel future supplemental plan shipments, as required by Section 310.3(a)(1)(vii). A copy of this Rule is attached hereto as "Attachment B" and incorporated herein as if fully set forth verbatim.

### Consumer Notification and Cessation of Collection Efforts

21. Defendants, their successors and assigns, must cease all collection efforts for all Continuity Program shipments that were shipped from January 1, 2001 through December 31, 2003, to Subscribers who had already purchased four shipments from Defendants' Book Clubs and Prenotification Negative Option Plans, but were refused cancellation of their enrollment by Defendants.

22. Defendants, their successors and assigns, must cease all collection efforts for all supplemental Prenotification Negative Option Plan shipments that were shipped, from January 1, 2001 through December 31, 2003, to Contract-complete Subscribers who had already requested cancellation of their Book Club accounts.

23. Defendants, their successors and assigns, must send a notice to all current members

of any of Defendants' Book Clubs or Prenotification Negative Option Plans disclosing, in a clear and conspicuous manner, all material terms and conditions of the program or plan, including the consumer's right to cancel at any time and instructions on how to cancel. For members of Defendants' Prenotification Negative Option Plans, this notice must be included with the first Announcement Defendants send to plan members following the date of entry of this Consent Decree. For members of Defendants' Book Clubs, this notice must be sent within sixty (60) days from the date of service of this order, and may be included with the earliest practical product shipment.

### Record Keeping

24. For a period of three (3) years from the date of entry of this Consent Decree, Defendants and their agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and are engaged in the marketing or sale of Defendants' books or products through the use of Book Clubs, Prenotification Negative Option Plans, or other Continuity Programs, are hereby restrained and enjoined from failing to create and retain the following records:

    A.    Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

    B.    Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the

person commenced work; and the date and reason for the person's termination, if applicable;

C. Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D. Written complaint letters and complaints sent via electronic mail (whether received directly, indirectly or through any third party) regarding the terms of or enrollment in any Book Club, Prenotification Negative Option Plan, or Continuity Program, and any responses to those complaints; and all records of complaints received over the telephone to the extent such information is obtained in the ordinary course of business; *provided* that if a response is in the form of a standard form letter, Defendants must retain a single copy of the form letter and must create and maintain information sufficient to identify the customer, the plan or program about which the complaint is made, which standard form letter was sent (including which version if the standard form letter has been revised), the date the response was sent, and the manner in which it was sent (*e.g.*, email, First Class Mail, or private or commercial courier);

E. Refund requests (whether received directly, indirectly or through any third party) regarding the terms of or enrollment in any Prenotification Negative Option Plan, or Continuity Program, and any responses to those requests; *provided* that if a response is in the form of a standard form letter, Defendants must retain a single

copy of the form letter and must create and maintain information sufficient to identify the customer, the plan or program pursuant to which the request is made, which standard form letter was sent (including which version if the standard form letter has been revised), the date the response was sent, and the manner in which it was sent (*e.g.*, email, First Class Mail, or private or commercial courier); and

F. Copies of all sales scripts, training materials, advertisements, or other marketing materials.

**Distribution of Order; Notice to FTC; Continuing Jurisdiction**

25. Defendants, their successors and assigns, within thirty (30) days of the entry of this Consent Decree, must provide:

i. A copy of this Consent Decree, the Prenotification Negative Option Rule, the Telemarketing Sales Rule, the Unordered Merchandise Statute, and the Synopsis of previous Commission determinations to each of their officers and to each of their managers responsible for conduct related to the subject matter of this Consent Decree; and

ii. A Summary, to be agreed upon by counsel for Defendants and the Commission, setting forth how to comply with the Consent Decree, the Prenotification Negative Option Rule, the Telemarketing Sales Rule, the Unordered Merchandise Statute, and the Synopsis of previous Commission determinations, on all employees, agents, and representatives who are responsible for conduct related to the subject matter of this Consent Decree (including, but not limited to, telemarketers, customer service representatives, persons responsible for drafting promotional

materials, and persons not identified as managers who supervise any of those listed above in this subparagraph).

Defendants, their successors and assigns, further must secure from each person a signed, or similarly authenticated, acknowledgment of receipt of a copy of the materials required to be provided under this Paragraph, and must within ten (10) days of complying with this Paragraph, provide an affidavit to the Associate Director, Division of Enforcement, Bureau of Consumer Protection, 600 Pennsylvania Ave., N.W., Washington, D.C. 20580, setting forth the fact and manner of their compliance, including the name and title of each person to whom a copy of the Consent Decree and other materials have been provided.

26. Defendants, their successors and assigns, shall notify the Associate Director, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Ave., N.W., Washington, D.C. 20580, at least thirty (30) days prior to any change in Defendants' business including, but not limited to, merger, incorporation, dissolution, assignment, sale which results in the emergence of a successor corporation, the creation or dissolution of a subsidiary or parent, or any other change which may affect Defendants' obligations under this Consent Decree. *Provided, however,* that with respect to any proposed change in the corporation about which the Defendants learn less than 30 days prior to the date such action is to take place, the Defendants shall notify the Commission's Associate Director for Enforcement as soon as practicable after obtaining such knowledge.

27. Defendants are hereby required, in accordance with 31 U.S.C. § 7701, to furnish to the Federal Trade Commission their taxpayer identifying numbers (employer identification

numbers), which shall be used for purposes of collecting and reporting on any delinquent amount arising out of Defendants' relationship with the government.

28. This Court shall retain jurisdiction of this matter for the purposes of enabling any of the parties to this Consent Decree to apply to the Court at any time for such further orders or directives as may be necessary or appropriate for the interpretation or modification of this Consent Decree, for the enforcement of compliance therewith, or for the punishment of violations thereof.

The parties, by their respective counsel, hereby consent to the terms and conditions of the Consent Decree as set forth above and consent to the entry thereof. Defendants waive any rights that may arise under the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED:                              FOR THE UNITED STATES OF AMERICA:

PETER D. KEISLER
Assistant Attorney General
Civil Division
U.S. Department of Justice

KENNETH L. WAINSTEIN
United States Attorney
District of Columbia

By LAURIE WEINSTEIN, D.C. BAR 389511
Assistant United States Attorney
555 4th St., NW
Washington, D.C. 20001
(202)

EUGENE M. THIROLF
Director
Office of Consumer Litigation

_/s/ Elizabeth Stein_
ELIZABETH STEIN
Attorney
Office of Consumer Litigation
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

FOR THE FEDERAL TRADE COMMISSION:

_/s/ Elaine D. Kolish_
ELAINE D. KOLISH
Associate Director for Enforcement
Bureau of Consumer Protection
Federal Trade Commission

_/s/ James Reilly Dolan_
JAMES REILLY DOLAN
EDWIN RODRIGUEZ
Assistant Director for Enforcement
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
(202) 326-3292

//

//

//

FOR THE DEFENDANTS

SCHOLASTIC INC.
GROLIER INCORPORATED
SCHOLASTIC AT HOME, INC.

By: *(signature)* Mary Alwater

*(signature)* Robert B. Bell
ROBERT B. BELL
DAVID MEDINE
Wilmer Cutler Pickering Hale and Dorr LLP
2445 M St., NW
Washington, DC 20037
(202) 663-6533

JUDGMENT IS THEREFORE ENTERED in favor of Plaintiff and against Defendants, pursuant to all the terms and conditions recited above.

Dated: **October 14**, 2005.

*(signature)*
United States District Judge